UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

# CRIMINAL MINUTES - GENERAL

'O'

| Case No. | CR 13-589-CAS | Date | September 15, 2014 |
|---|---|---|---|
| Present: The Honorable | CHRISTINA A. SNYDER | | |
| Interpreter | N/A | | |

| Catherine Jeang | Laura Elias | Douglas Miller<br>Monica Ramirez |
|---|---|---|
| *Deputy Clerk* | *Court Reporter/Recorder, Tape No.* | *Assistant U.S. Attorney* |

| U.S.A. v. Davis: | Present | Cust. | Bond | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| 1) JOSHUA DAVIS | X | X | | MICHAEL CERNYAR | X | | X |

**Proceedings:** DEFENDANT JOSHUA DAVIS'S MOTION TO SUPPRESS EVIDENCE (Dkt. # 89, filed August 28, 2014)

## I.   INTRODUCTION

On August 22, 2013, a federal grand jury charged defendant Joshua Davis and his mother, co-defendant Sharilyn K. Anderson, with sex-trafficking a minor, Victim 1, in violation of 18 U.S.C. § 1591(a)(1), (a)(2); and sex-trafficking an adult, Victim 2, by coercion, fraud, or threats of force, in violation of 18 U.S.C. § 1591(a)(1), (a)(2).  Dkt. #12.  Davis is also charged with coercing or enticing a minor to engage in prostitution, in violation of 18 U.S.C. § 2422(b); transporting a minor for prostition, in violation of 18 U.S.C. § 2423(a); and transporting a minor for illicit sexual conduct and for the purpose of commercial advantage or private financial gain, in violation of 18 U.S.C. § 2423(d).  Id.  This case is set for trial on November 12, 2014.

On August 28, 2014, Davis ("defendant") field a motion to suppress tangible evidence seized by the government and several statements he made on April 23, 2013, the date of his arrest.  Dkt. #89.  On September 8, 2014, the government filed an opposition.  Dkt. #105.  Defendant had previously agreed not to reply to the opposition.  Dkt. #98.  On September 15, 2014, the parties appeared at a hearing on this matter.  After considering the parties' arguments, the Court finds and concludes as follows.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

'O'

## II.   BACKGROUND

Around March 2013, officers of the Long Beach Police Department ("LBPD") informed agents of the Department of Homeland Security, Homeland Security Investigations ("HSI") that Victim 1's father had reported that Victim 1 was missing and that he had seen her advertising prostitution services online. Nuñez Decl. ¶ 3. Roughly contemporaneously, HSI Special Agent Nuñez received reports from the Las Vegas Metro Police Department explaining that Victim 1 had been arrested for prostitution in Las Vegas. Id. ¶ 3. On April 17, 2013, Nuñez and LBPD officers accessed Victim 1's profile on another prostitution-related website and learned that she would be in or around Ontario, California between April 18 and 20, 2013. Id. ¶ 4. The officers learned that Victim 1 was staying at a hotel in Rancho Cucamonga that she and defendant had checked into and, on April 18, 2013, made contact with Victim 1 (but not defendant) at that hotel. Id. ¶¶ 5-6. According to the officers, Victim 1 admitted in an interview that day that defendant was her pimp, that he frequently rented hotel rooms for her, and that he collected thirty percent of the proceeds from her prostitution. Id. ¶ 7; Hooker Decl. ¶ 4. After officers searched Victim 1's phone with consent and confronted her with text messages indicating that Davis knew she was a minor, Victim 1 admitted that defendant knew her to be under eighteen years of age. Nuñez Decl. ¶ 8. Law enforcement officials have stated that, based on the foregoing, they determined that there was probable cause to arrest defendant on California human trafficking, pimping, and pandering charges, California Penal Code §§ 266(h), 266(I), 236.1. Id. ¶ 9; Hooker Decl. ¶ 5; Benskin Decl. ¶ 5.

On April 23, 2013, law enforcement officers conducted surveillance on defendant's residence in Long Beach, California. Nuñez Decl. ¶ 10; Hooker Decl. ¶ 5. In the early afternoon, defendant entered his vehicle, which was parked on the street in front of the residence. Davis Decl. ¶ 2; Benskin Decl. ¶ 6. At this point, the officers intercepted defendant. The government contends that LBPD Detective Toby Benskin, the first to make contact with defendant, was wearing his police badge and identified himself to defendant as a police officer. Benskin Decl. ¶ 6. Nuñez also states that he was wearing his law enforcement badge around his neck. Nuñez Decl. ¶ 11. Then, according to the government, Benskin ordered defendant to drop the cellular telephone defendant was holding in his right hand and exit the car. Benskin Decl. ¶ 6. Defendant complied, according to Benskin. Id. Defendant maintains that several vehicles blocked his way and that men exited those vehicles and handcuffed him without identifying themselves. Davis Decl. ¶ 3.

Defendant avers that Nuñez stated that defendant's car was reported stolen and that defendant was being arrested for grand theft auto, an accusation that defendant immediately denied. Davis Decl. ¶¶ 4-5. Defendant declares that, once he was transported to the police station, officers asked no questions regarding a stolen vehicle, that no charges were filed against

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

'O'

defendant at his arraignment in late April or early May, and that defendant was later charged with unrelated offenses. Davis Decl. ¶¶ 15, 18. Defendant also states that officers searched his vehicle and a safe found in the trunk of his vehicle without his consent. Id. ¶¶ 6-11.

Nuñez denies telling defendant that his vehicle had been reported stolen or that defendant was being arrested for grand theft auto. Nuñez Decl. ¶ 13. Nuñez states that he did not tell defendant of the charges at the time of the arrest out of fear that defendant or others at the scene might destroy evidence if they knew of the nature of the charges. Id. ¶ 13. Hooker declares that he saw several people standing outside of defendant's residence at the time of the arrest, in close proximity to defendant. Hooker Decl. ¶ 7. Hooker does not recall speaking directly with defendant about the pending charges, but states that he told defendant or bystanders that the police were addressing "car issues" related to defendant's vehicle. Id. ¶ 7. Hooker states that he did not mention the actual charges because of evidence destruction fears, especially since much of the evidence in the case was expected to be found on easily erasable digital devices. Id. Benskin does not recall speaking with defendant about the charges at the time of the arrest. Benskin Decl. ¶ 9. Nuñez asserts that he heard Hooker "mention that there was an issue with defendant's vehicle," and that defendant did say that his vehicle was not stolen. Nuñez Decl. ¶ 14. Nuñez also reports hearing defendant say "call [Victim 2]" twice. Nuñez Decl. ¶ 14.

Benskin declares that he searched defendant's vehicle and retrieved the cellular telephone that Davis had dropped on the passenger seat before exiting the vehicle. Benskin Decl. ¶ 8. Benskin declares that he seized the telephone as potential evidence of human traffic and pandering or pimping, and gave the telephone as well as a Metro PCS contract in Victim 2's name, also found in the car, to Nuñez. Id. ¶ 8; Nuñez Decl. ¶ 12.

After leaving the scene, Nuñez called a telephone number Victim 1 had identified as defendant's telephone number. Nuñez Decl. ¶ 18. The cellular telephone found in defendant's car rang. Id. At the LBPD police station, officers interviewed defendant after reading him his Miranda rights and receiving a waiver of defendant's right to remain silent. Id. ¶ 19; Hooker Decl. ¶ 9. Nuñez asked defendant for consent to search his phone, and for the password to the phone. Nuñez Decl. ¶ 19. Nuñez states that he indicated that if defendant was "telling the truth, he had nothing to hide," and that he would inevitably be able to search the phone anyway. Id. Defendant states that he refused to provide the password, Davis Decl. ¶ 16, but Nuñez declares that defendant eventually gave him the password, Nuñez Decl. ¶ 19. During the interview, defendant allegedly admitted that he had driven Victim 1 to the hotel at which she was found, but denied knowing that she was engaged in prostitution. Hooker Decl. ¶ 9. Defendant was booked on the same day at the LBPD station on state human trafficking and pandering charges. Id. ¶ 10. According to Nuñez, he confirmed the password was correct at the time of the interview, but did not search the phone at that time; rather, he returned it to the LBPD to book

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

'O'

into evidence, and applied for and obtained a search warrant for the phone on May 1, 2013. Nuñez Decl. ¶¶ 19-20.

## III.  ANALYSIS

Defendant argues that he was stopped, and evidence searched and seized, in violation of the Fourth Amendment. The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." He requests that the Court suppress the following evidence under the Fourth Amendment and the "fruit of the poisonous tree" doctrine.

First, defendant argues that officers used fake allegations of grand theft auto to effect a "pretextual" stop in order to gather evidence of the more serious trafficking crimes of which defendant now stands accused. But as set forth above, law enforcement officials had significant evidence at the time of the arrest that defendant was involved in sex trafficking–evidence that they believed constituted probable cause to arrest defendant for trafficking, pandering, and prostitution. The Fourth Amendment does not require a warrant to effect a felony arrest as long as the arrest is supported by probable cause. See United States v. Watson, 423 U.S. 411, 423-24 (1976). Additionally, a stop is "not pretextual where there is 'probable cause to believe that a violation of law has occurred.'" United States v. Hudson, 100 F.3d 1409, 1414 (9th Cir. 1996) (citing Whren v. United States, 517 U.S. 806, 811 (1996)). "Officers have probable cause for an arrest if at the time of the arrest, 'the facts and circumstances within their knowledge and of which they [have] reasonable trustworthy information [are] sufficient to warrant a prudent man in believing' that the defendant committed an offense." United States v. Henderson, 241 F.3d 638, 648 (2000) (quoting Hunter v. Bryant, 502 U.S. 224, 228 (1991) (brackets in original).

The Court finds the officers' belief that they had probable cause to stop and arrest defendant for trafficking-related crimes objectively reasonable, based on the submitted declarations.[1] Officers reasonably relied on statements by Victim 1 as well as corroborating evidence, including text messages from defendant and surveillance videos, in determining that probable cause existed. Therefore, there was no unconstitutional pretextual stop. This conclusion is not altered by the facts that police did not inform defendant of the charges at the

---

[1] Moreover, the arresting officers deny that defendant was told he was being arrested for grand theft auto, and submit a plausible evidence preservation rationale for statements to the effect that the officers were on the scene to address "car issues." Even taking defendant at his word, however, there are no grounds to suppress any evidence or statements on the basis of a pretextual stop.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CRIMINAL MINUTES - GENERAL

'O'

time of the arrest, or the fact that state charges were not actually filed. For similar reasons, the Court finds that probable cause existed to search defendant's car without a warrant pursuant to the automobile or search incident to arrest exceptions. See, e.g., Maryland v Dyson, 527 U.S. 465 (1999) (automobile exception); Arizona v. Gant, 556 U.S. 332 (2009) (search incident to arrest exception).

Because the initial stop and arrest were valid, the Court need not consider defendant's "fruit of the poisonous tree" argument. Finally, although defendant alludes to Riley v. California, 134 S. Ct. 2473 (2014) (holding that a warrant be secured before the government searches the contents of a cellular telephone), defendant has not disputed that the government did obtain a warrant before searching the telephone.

## IV. CONCLUSION

In accordance with the foregoing, defendant's motion to suppress is DENIED.

IT IS SO ORDERED.

| | 00 | : | 13 |
|---|---|---|---|
| Initials of Deputy Clerk | | CMJ | |